IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

VECRON EXIM LTD., §
　§
　　　　Plaintiff, §
　§
v. §
　§ CIVIL ACTION NO. H-18-2394
XPO LOGISTICS, INC.; XPO GLOBAL §
FORWARDING, INC.; AFIF BALTAGI; §
and PRODUCTION TIRE COMPANY, §
　§
　　　　Defendants. §

**MEMORANDUM OPINION AND ORDER**

Plaintiff Vecron Exim Ltd. ("Vecron" or "Plaintiff") filed this action against defendants XPO Logistics, Inc. and XPO Global Forwarding, Inc. (collectively, "XPO"), Afif Baltagi ("Baltagi"), and Production Tire Company (collectively, "Defendants")[1] alleging that Defendants (and others not parties to this action) engaged in a conspiracy to defraud Plaintiff through purchase and sale transactions for off-the-road mining tires ("Tires").[2] Plaintiff alleges that Jason Adkins ("Adkins"), the owner of Landash Corporation ("Landash"), approached Plaintiff seeking purchase

---

[1]Plaintiff also filed claims against Mid America Tire of Hillsboro, Inc. d/b/a Best-One Tire & Service of Hillsboro ("Mid America") and Todd Wilkin ("Wilkin"). See Plaintiff's Original Complaint ("Complaint"), Docket Entry No. 1, pp. 23-25, 29-30, 33-34. Wilkin and Mid America were dismissed because of the bankruptcy stay imposed by 11 U.S.C. § 362(a)(1). See Order of Partial Dismissal [January 10, 2019], Docket Entry No. 42; Order of Partial Dismissal [November 2, 2018], Docket Entry No. 27.

[2]See Complaint, Docket Entry No. 1, p. 1.

order financing for a transaction between a buyer and seller for purchase of thirty-six Tires.[3] Adkins represented to Plaintiff that the seller was Mid America and the buyer was Production Tire.[4] Plaintiff alleges that Adkins was already the owner of the thirty-six Tires, and that the entire transaction (and accompanying fraudulent documents) was a sham orchestrated to defraud Plaintiff.[5]

Pending before the court are Production Tire Company's Motion to Dismiss for Lack of Personal Jurisdiction ("Production Tire's Motion to Dismiss") (Docket Entry No. 17) and Defendant XPO's Amended Motion for Leave to Designate Responsible Third Parties ("XPO's Motion to Designate RTPs") (Docket Entry No. 51). For the reasons explained below, Production Tire's Motion to Dismiss will be denied and XPO's Motion to Designate RTPs will be granted.

## I. Production Tire's Motion to Dismiss

Production Tire argues in its Motion to Dismiss that the court lacks both specific and general personal jurisdiction over it.[6] The court permitted Plaintiff to conduct jurisdictional discovery.[7]

---

[3] See id. at 2.

[4] See id.

[5] See id. at 3-4.

[6] See Production Tire's Motion to Dismiss, Docket Entry No. 17, pp. 7-13.

[7] See Hearing Minutes and Order, Docket Entry No. 34.

After deposing Production Tire's corporate representative, Hector Esquijerosa ("Esquijerosa"), and obtaining documents from Production Tire, Plaintiff filed its Amended Opposition to Production Tire's Motion to Dismiss on January 25, 2019.[8] Production Tire filed its Reply to Plaintiff's Amended Opposition on February 4, 2019.[9]

## A. Standard of Review

Dismissal for lack of personal jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(2). When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant.'" Quick Technologies, Inc. v. Sage Group PLC, 313 F.3d 338, 343 (5th Cir. 2002), cert. denied, 124 S. Ct. 66 (2003) (quoting Mink v. AAAA Development LLC, 190 F.3d 333, 335 (5th Cir. 1999)). "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a prima facie case that personal jurisdiction is proper.'" Id. (quoting Wilson v. Belin, 20 F.3d 644, 648 (5th

---

[8]See Plaintiff's Amended Opposition to Production Tire Company's Motion to Dismiss for Lack of Personal Jurisdiction ("Plaintiff's Amended Opposition"), Docket Entry No. 43, p. 1.

[9]See Production Tire Company's Reply to Vecron Exim Ltd.'s Amended Opposition to Production Tire Company's Motion to Dismiss for Lack of Personal Jurisdiction ("Production Tire's Reply"), Docket Entry No. 44.

-3-

Cir.), cert. denied, 115 S. Ct. 322 (1994)). "In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" Id. at 344 (quoting Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985)).

The court must accept as true the uncontroverted allegations in the plaintiff's complaint and must resolve in favor of the plaintiff any factual conflicts. Guidry v. United States Tobacco Co., Inc., 188 F.3d 619, 625 (5th Cir. 1999). However, the court is not obligated to credit conclusory allegations, even if uncontroverted. Panda Brandywine Corp. v. Potomac Electric Power Co., 253 F.3d 865, 869 (5th Cir. 2001). "Absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law. . . ." Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 418 (5th Cir. 1993).

B. Applicable Law

The court may exercise personal jurisdiction over a nonresident defendant if "(1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." McFadin v. Gerber, 587 F.3d

753, 759 (5th Cir. 2009), cert. denied, 131 S. Ct. 68 (2010). Since the Texas long-arm statute extends as far as constitutional due process allows, the court considers only the second step of the inquiry. Id.

Exercise of personal jurisdiction over a nonresident defendant comports with federal due process guarantees when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 66 S. Ct. 154, 158 (1945) (quoting Milliken v. Meyer, 61 S. Ct. 339, 343 (1940)). A plaintiff satisfying these two requirements raises a presumption that exercise of jurisdiction over the defendant is reasonable, and the burden shifts to the defendant to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 105 S. Ct. 2174, 2185 (1985). "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that [he] 'reasonably anticipate[d] being haled into court'" in the forum. McFadin, 587 F.3d at 759. "There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." Lewis v. Fresne, 252 F.3d 352, 358 (5th Cir. 2001).

1. General Jurisdiction

A court may exercise general jurisdiction over non-resident defendants "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011). "Establishing general jurisdiction is 'difficult' and requires 'extensive contacts between a defendant and a forum.'" Sangha v. Navig8 ShipManagement Private Limited, 882 F.3d 96, 101-02 (5th Cir. 2018) (quoting Johnston v. Multidata Systems International Corp., 523 F.3d 602, 609 (5th Cir. 2008)). Vague allegations "that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." Johnston, 523 F.3d at 610.

2. Specific Jurisdiction

A court may exercise specific jurisdiction when the alleged injuries arise from or are directly related to the non-resident defendant's contacts with the forum state. Gundle Lining Construction Corp. v. Adams County Asphalt, Inc., 85 F.3d 201, 205 (5th Cir. 1996) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S. Ct. 1868, 1872 n.8 (1984)); Quick Technologies, 313 F.3d at 344. To determine whether specific jurisdiction exists, the court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit

offends traditional notions of fair play and substantial justice." Gundle Lining, 85 F.3d at 205. Even a single contact can support specific jurisdiction if the defendant "'purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Burger King, 105 S. Ct. at 2183. "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." Ruston Gas, 9 F.3d at 419 (citing World-Wide Volkswagen Corp. v. Woodson, 100 S. Ct. 559, 567 (1980)).

There are three parts to a purposeful availment inquiry. First, only the defendant's contacts with the forum are relevant, not the unilateral activity of the plaintiff or a third party. Sangha, 882 F.3d at 103 (citing Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014) ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.")). Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. Id. (citing Walden, 134 S. Ct. at 1123). Lastly, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. Burger King, 105 S. Ct. at 2183. Since specific jurisdiction is claim specific, a plaintiff bringing multiple claims that arise out of different contacts of the defendant with the forum must

establish specific personal jurisdiction for each claim. Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 274 (5th Cir. 2006).

C. Analysis

Plaintiff does not dispute that the court lacks general jurisdiction over Production Tire,[10] but argues that the court has specific jurisdiction. Plaintiff argues that this court has jurisdiction over Production Tire based on a "letter agreement" between Plaintiff, Production Tire, and Landash regarding the allegedly fraudulent purchase order for the Tires. The letter agreement was sent to Production Tire by Plaintiff, and by signing the agreement, Production Tire agreed:

> [T]hat if the goods that are the subject of the Purchase Order (the "Goods") conform to the Purchase Order, [Production Tire] will take the Goods and pay the face amount of the invoice (the "Invoice") issued by [Landash] to [Production Tire] for such Goods . . . to [Vecron] within 14 days from the time [Production Tire] inspect[s] the Goods at XPO Logistics warehouse located at 4513 Oates Road, Houston, TX 77013 . . . .[11]

Plaintiff's Complaint alleges two causes of action against Production Tire. First, Plaintiff alleges that Production Tire

---

[10]The court agrees with the parties that it lacks general jurisdiction over Production Tire. Production Tire is a Florida corporation with its principal place of business in Miami, Florida. See Complaint, Docket Entry No. 1, p. 5 ¶ 12. Production Tire's alleged contacts with Texas are all related to the transaction giving rise to this action and are far too limited to constitute a "continuous and systematic" presence rendering Production Tire "essentially at home" in Texas.

[11]See Letter Agreement sent from Vecron to Production Tire ("Letter Agreement"), Exhibit B to Plaintiff's Amended Opposition, Docket Entry No. 43-2, pp. 2, 5.

breached the Letter Agreement by failing to pay for the goods (i.e., the Tires) after inspecting them.[12] Second, Plaintiff alleges that Production Tire was a participant in a civil conspiracy to defraud Plaintiff.[13]

While the Tires were located in Texas, the Letter Agreement did not require that the purchase of the Tires occur in Texas. The Letter Agreement allowed Production Tire 14 days after the inspection to pay Plaintiff and did not specify a location where payment was to take place. The Letter Agreement, however, did require Production Tire to partially perform in Texas. It required Production Tire to inspect the Tires at XPO's warehouse in Houston. Although Production Tire argues that its representatives never actually inspected the Tires in Texas,[14] an April 4, 2016, e-mail to Landash from Hector Esquijerosa, Production Tire's representative, stated that "[w]e have inspected the tires and all is well."[15] This representation is sufficient to raise a fact issue as to whether Production Tire inspected the Tires in Texas.

Production Tire knew when it entered into the Letter Agreement that the Tires were located in Texas. The Letter Agreement

---

[12]See Complaint, Docket Entry No. 1, p. 30 [Count VI].

[13]See id. at 33 [Count IX].

[14]See Production Tire's Reply, Docket Entry No. 44, pp. 4-5 ¶ 10.

[15]See id. and E-mail sent by Hector Esquijerosa to Landash Corporation, Exhibit F to Plaintiff's Amended Opposition, Docket Entry No. 43-6.

required Production Tire to inspect the Tires in Texas. Production Tire should therefore have reasonably expected to be called before a Texas court in the event that it breached the Letter Agreement because the Agreement was to be partially performed in Texas and was for the purchase of goods located in Texas. The Letter Agreement establishes the requisite minimum contacts as to both Plaintiff's breach of contract and civil conspiracy claims against Production Tire.[16] The court therefore has specific personal jurisdiction over Production Tire, and Production Tire's Motion to Dismiss will be denied.

## II. XPO's Motion to Designate Responsible Third Parties

XPO seeks leave to designate Adkins, Midwest Coal, LLC ("Midwest Coal"), Midwest Mining, LLC ("Midwest Mining"), Landash, John Eckerd, Jr. ("Eckerd"), Esquijerosa, and now-dismissed defendants Wilkin and Mid America as responsible third parties ("RTP(s)") for the tort claims alleged in Plaintiff's Complaint. Plaintiff and XPO dispute both the designation of certain parties as RTPs and the designation of RTPs as to certain counts in Plaintiff's Complaint.

---

[16]Plaintiff's civil conspiracy claim against Production Tire alleges that Production Tire was involved in creating false documents and communications evidencing a transaction for the purchase and sale of Tires to induce Plaintiff to finance the purchase order transaction. See Complaint, Docket Entry No. 1, p. 33. The Letter Agreement evidences Production Tire's role in the scheme to defraud alleged by Plaintiff.

## A. Standard of Review and Applicable Law

District courts in the Fifth Circuit have found that Texas's proportionate responsibility statute, Tex. Civ. Prac. & Rem. Code § 33.004, is not in conflict with the Federal Rules of Civil Procedure and can therefore apply substantively in a diversity case. Withers v. Schneider National Carriers, Inc., 13 F. Supp. 3d 686, 688 (E.D. Tex. 2014); see also Werner v. KPMG LLP, 415 F. Supp. 2d 688, 692 (S.D. Tex. 2006). Under Texas's proportionate responsibility statute, a responsible third party is:

> any person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these.

Tex. Civ. Prac. & Rem. Code § 33.011(6). In tort actions where more than one person or entity is alleged to have caused (or contributed to causing) the plaintiff's injuries, the trier of fact is tasked with determining the percentage of responsibility for each claimant, defendant, settling person, and RTP. Id. § 33.003(a). "A defendant may seek to designate a person as a responsible third party by filing a motion for leave to designate that person as a responsible third party." Id. at § 33.004(a). The burden is on the defendant seeking to designate RTPs to produce sufficient evidence to raise a genuine issue of fact regarding the designated party's responsibility for the claimant's injury or damage. Id. § 33.003(b). To successfully prevent designation of an RTP, the burden is on the plaintiff to establish that:

(1) the defendant did not plead sufficient facts concerning the alleged responsibility of the [third party] to satisfy the pleading requirement of the Texas Rules of Civil Procedure; and

(2) after having been granted leave to replead, the defendant failed to plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirements of the Texas Rules of Civil Procedure.

Tex. Civ. Prac. & Rem. Code § 33.004(g)(1), (2). A court's grant of a motion for leave to designate RTPs does not preclude a party from later challenging that designation. Id. § 33.004(l).

## B. Analysis

Plaintiff does not oppose the designation of Adkins, Landash, Wilkin, Mid America, and Esquijerosa as RTPs as to Counts II (fraud against XPO) and IX (civil conspiracy against all Defendants). The court therefore affirms XPO's designation of these parties as RTPs as to Counts II and IX.

XPO also seeks to designate RTPs as to Plaintiff's negligent bailment (Count VII) and negligent misrepresentation (Count VIII) claims. The court is persuaded by XPO's argument that Plaintiff's negligent bailment claim sounds in tort rather than contract as pled by Plaintiff and that it is therefore appropriate to designate RTPs as to that claim.[17] The court is also persuaded that

---

[17]XPO's Reply, Docket Entry No. 57, pp. 3-4; Complaint, Docket Entry No. 1, pp. 30-31 (seeking to hold XPO responsible for "acts of negligence which, separately and concurrently, proximately caused injuries and damages" to Plaintiff).

designation of RTPs is appropriate for Plaintiff's negligent misrepresentation claim against XPO because XPO has presented sufficient facts to raise a genuine dispute of material fact as to whether the parties XPO seeks to designate as RTPs might bear some responsibility for the injury claimed by Plaintiff in its negligent misrepresentation claim.

XPO also seeks to designate parties other than Adkins, Landash, Wilkin, Mid America, and Esquijerosa as RTPs. The court is persuaded by the arguments in XPO's Reply that designation of Midwest Coal, Midwest Mining, and Eckerd as RTPs as to the tort claims in Plaintiff's Complaint is appropriate. XPO has pled enough facts to show that it is appropriate to designate Midwest Mining and Midwest Coal as RTPs. Adkins controlled Midwest Coal and used the e-mail address "midwestmining@gmail.com" to conduct Landash business.[18] Adkins' relationship with Midwest Coal and Midwest Mining is sufficient to raise a genuine dispute of material fact about these entities' involvement in the scheme to defraud alleged by Plaintiff. XPO has also pled sufficient facts to raise a genuine issue of fact regarding Eckerd's responsibility for Plaintiff's injuries. XPO alleges that "Eckerd facilitated meetings between Adkins and his targets; Eckerd made representations to Adkins's targets that Adkins was a wealthy businessman; Eckerd participated in tire inspections with Adkins's

---

[18]See Defendant XPO's Reply in Support of Its Amended Motion for Leave to Designate Responsible Third Parties ("XPO's Reply"), Docket Entry No. 57, pp. 6-7.

targets; Eckerd formed a fraudulent corporate entity with Adkins; and Eckerd received kickbacks for his involvement."[19]

XPO has satisfied its burden to raise a genuine dispute of material fact regarding Adkins, Midwest Coal, Midwest Mining, Landash, Eckerd, Esquijerosa, Wilkin, and Mid America's responsibility for the injuries alleged in Plaintiff's civil conspiracy, fraud, negligent bailment, and negligent misrepresentation claims against XPO. XPO's Motion to Designate RTPs will therefore be granted.

### III. Conclusion

For the reasons explained above, the court finds that it has specific personal jurisdiction over Production Tire. Production Tire Company's Motion to Dismiss for Lack of Personal Jurisdiction (Docket Entry No. 17) is therefore **DENIED**. The court also finds that Adkins, Midwest Coal, Midwest Mining, Landash, Eckerd, Esquijerosa, Wilkin, and Mid America are appropriately designated as RTPs as to Plaintiff's civil conspiracy, fraud, negligent bailment, and negligent misrepresentation claims against XPO. Defendant XPO's Amended Motion for Leave to Designate Responsible Third Parties (Docket Entry No. 51) is therefore **GRANTED**.

**SIGNED** at Houston, Texas, on this the 8th day of May, 2019.

SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[19]See XPO's Reply, Docket Entry No. 57, p. 6.