United States District Court
Southern District of Texas

**ENTERED**

July 01, 2022

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

VECRON EXIM LTD., §
§
          Plaintiff, §
§
v. § CIVIL ACTION NO. H-18-2394
§
XPO LOGISTICS, INC., §
XPO GLOBAL FORWARDING, INC., §
AFIF BALTAGI, MID-AMERICA §
TIRE OF HILLSBORO, INC., §
d/b/a BEST-ONE TIRE & SERVICE, §
OF HILLSBORO, TODD WILKIN, §
and PRODUCTION TIRE COMPANY, §
§
          Defendants. §

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendant Afif Baltagi's Memorandum in Support of Motion for Relief from the Judgment ("Baltagi's Motion") (Docket Entry No. 181), in which Defendant, Afif Baltagi ("Baltagi" or "Defendant"), moves for relief from the Final Judgment (Docket Entry No. 179) entered against him on March 18, 2022, in favor of Plaintiff, Vecron Exim Ltd. ("Vecron" or "Plaintiff"), for the principal amount of six million five hundred and seventy-six thousand dollars ($6,576,000.00), together with post-judgment interest at the rate of 1.15%. Also before the court are Plaintiff Vecron Exim Ltd.'s Response in Opposition to Defendant Afif Baltagi's Motion for Relief from the Judgment ("Vecron's Response") (Docket Entry No. 182), and Defendant Afif Baltagi's Reply to Plaintiff Vecron Exim Ltd.'s Response in Opposition to Motion for Relief from the Judgment ("Baltagi's

Reply" (Docket Entry No. 183). For the reasons explained below, Baltagi's Motion for Relief from the Judgment will be denied.

## I.  Background[1]

This case has a long history but the underlying facts are not in dispute.  On July 12, 2018, Vecron filed Plaintiff's Original Complaint (Docket Entry No. 1) against multiple defendants, including Baltagi, for their alleged involvement in an allegedly fraudulent scheme to purchase and sell off-the-road mining tires. The Clerk's record contains a Proof of Service (Docket Entry No. 28) reflecting that Baltagi was personally served with the summons and complaint on September 24, 2018.  The Proof of Service identifies the person served as Afif Baltagi, and describes him as "Age: L30s; Ethnicity: Middle Eastern; Gender: Male; Weight: 230; Height: 6'4"; Hair: Black."[2]

On March 6, 2019, two of Baltagi's co-defendants, XPO Logistics, Inc. and XPO Global Forwarding, Inc. (together "XPO") filed an Amended Answer to Plaintiff's Original Complaint and Cross Claim Against Afif Baltagi ("XPO's Amended Answer and Cross Claim")

---

[1]This background is based primarily on the section of Baltagi's Motion subtitled "Background," Docket Entry No. 181, pp. 2-6 ¶¶ 3-14, supplemented by the Clerk's record and exhibits to Vecron's Response.  Page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2]Proof of Service, Docket Entry No. 28, p. 3.

(Docket Entry No. 49).  On April 22, 2019, Baltagi filed an Answer to XPO's cross claims stating inter alia "I represent my-self."[3]

On June 27, 2019, Baltagi responded to a deposition notice by filing an instrument titled "Reschedule of Deposition of Defendant Afif Baltagi" stating that "I will be needing to reschedule the proposed deposition until I obtain legal representation.  Once I have retained counsel, I will advise all parties so we can schedule the deposition."[4]

On July 16, 2019, XPO filed a Notice [of] Deposition of Afif Baltagi stating that XPO "will depose Afif Baltagi on August 5 and 6, 2019, beginning at 10:00 a.m. (CT)."[5]

On July 30, 2019, Baltagi sent an email to Vecron's counsel asking "please resend the two pdf attachment[s] of interrogatorie question[s] that was sent to me earlier this month."[6]

On August 5, 2019, Baltagi appeared for his deposition represented by two attorneys who advised him not to answer any questions.  Based on the advice of counsel Baltagi refused to answer any questions at his deposition.[7]

---

[3]Docket Entry No. 60, p. 1.

[4]Docket Entry No. 68.

[5]Docket Entry No. 73.

[6]Exhibit B-4 to the Affidavit of Jodie E. Buchman, Esq. ("Buchman Affidavit"), Exhibit B to Plaintiff's Response, Docket Entry No. 182-3, p. 20.

[7]See Oral Videotaped Deposition of Mr. Afif J. Baltagi ("Baltagi Deposition"), pp. 3 and 6:20-23(showing that Baltagi was represented by attorneys Mike DeGeurin and Bryan Garris), and 7:20-
(continued...)

On August 12, 2019, Baltagi filed a Motion to Stay Discovery and Motion for Protective Order ("Baltagi's Motion to Stay Discovery") (Docket Entry No. 81), asking the court to enter an order staying Plaintiff, i.e., Vecron, from seeking discovery against him or, alternatively, entering a protective order that prevented Plaintiff from requesting discovery from him until the United States Department of Justice and the Federal Bureau of Investigation concluded a related criminal investigation.[8]

On August 30, 2019, Vecron filed Plaintiff's Memorandum in Opposition to Mr. Baltagi's Motion to Stay Discovery and Motion for Protective Order ("Vecron's Opposition to Baltagi's Motion to Stay Discovery") (Docket Entry No. 82), arguing that neither a stay nor a protective order was warranted because Baltagi failed to cite facts or legal authority supporting his requests and because Baltagi is a defendant and key witness.[9]

On September 3, 2019, the court entered an Order (Docket Entry No. 83) denying Baltagi's Motion to Stay Discovery.

---

[7](...continued)
23 (asserting Fifth Amendment privilege against self-incrimination), Exhibit A to Vecron's Response, Docket Entry No. 182-2, pp. 4 and 7-8. See also Joint Status Report, Docket Entry No. 154, p. 2 ¶ (3).

[8]Baltagi's Motion to Stay Discovery, Docket Entry No. 81, pp. 1-2.

[9]Vecron's Opposition to Baltagi's Motion to Stay Discovery, Docket Entry No. 82, p. 4.

For over two years from July of 2019 to August of 2021, the parties, including Baltagi, filed multiple joint or unopposed motions to modify the Docket Control Order, all of which stated Baltagi's agreement or non-opposition.  The parties also filed a joint Stipulation of Dismissal of Defendant Production Tire (Docket Entry No. 108).  Baltagi's participation or non-opposition to the joint motions and to the stipultion of dismissal is evidenced by email exchanges with Vecron's counsel summarized in the following table:

| Joint or Unopposed Motion | | Resulting Order | | Evidence of Baltagi's Participation or Lack of Opposition | |
|---|---|---|---|---|---|
| Docket Entry | Date | Docket Entry | Date | Exhibit to Buchman Affidavit | Docket Entry |
| 75 | 07-18-19 | 76 | 07-18-19 | B-3 | 182-3, pp. 16-17 |
| 87 | 10-11-19 | 88 | 10-15-19 | B-5 | 182-3, pp. 21-23 |
| 108 | 01-08-20 | none | | B-6 | 182-3, pp. 24-28 |
| 124 | 03-19-20 | 125 | 03-20-20 | B-7 | 182-3, pp. 29-31 |
| 126 | 06-11-20 | 127 | 06-12-20 | none | |
| 129 | 09-16-20 | 130 | 09-17-20 | B-8 | 182-3, pp. 32-38 |
| 131 | 02-10-20 | 132 | 02-10-21 | none | |
| 137 | 05-14-21 | 138 | 05-14-21 | B-10 | 182-3, pp. 52-54 |
| 147 | 07-28-21 | 149 | 07-29-21 | B-11 | 182-3, pp. 55-56 |

On January 27, 2021, Baltagi declined to participate in mediation by sending an email to the mediator copied to other

counsel stating, "[p]lease let all parties be informed that I will not be able to attend mediation.  I cannot afford it and I work every day of the week."[10]

On August 13, 2021, Vecron and XPO filed a Joint Motion to Dismiss Claims Against XPO Logistics, Inc. and XPO Global Forwarding, Inc. Only (Docket Entry No. 150).  The joint motion stated that Vecron and XPO had settled the claims and causes of action pending between them, and that as part of the settlement, Vecron agreed to dismiss all claims against XPO with prejudice. Vecron and XPO stated that neither of them intended to dismiss the entire action and that they were both retaining their claims and cross-claims against Baltagi.[11]  On August 16, 2021, the court entered an Order (Docket Entry No. 151) stating:

> 1.    All claims by Vecron against XPO only shall be dismissed with prejudice; and
>
> 2.    The Court retains jurisdiction over the claims filed by Vecron against defendant, Afif Baltagi ("Baltagi") and the cross-claims filed by XPO Logistics, Inc. and XPO Global Forwarding, Inc. against Baltagi.

On August 23, 2021, the court entered an Order (Docket Entry No. 152) stating that "Counsel are requested to submit a status

---

[10]See Exhibit B-9 to Buchman Affidavit, Exhibit B to Vecron's Response, Docket Entry No. 182-3, p. 40.

[11]Joint Motion of Vecron Exim Ltd., XPO Logistics, Inc. and XPO Global Forwarding, Inc., to Dismiss Claims Against XPO Logistics, Inc. and XPO Global Forwarding, Inc. Only, Docket Entry No. 150, p. 1 ¶¶ 2-3.

report by September 3, 2021, describing: (1) the remaining parties and claims in this action; . . ."[12]

On September 3, 2021, Vecron's counsel sent Baltagi an email stating that "[t]he Court ordered that we file a joint status report with the Court today.  We are working on the draft and will get it to you as soon as possible.  Please reply to this email and confirm that you are around today to review the email and add your comments, if any."[13]   Shortly thereafter, Vecron's counsel set Baltagi an email stating that "I just sent it a few minutes ago. Please confirm receipt and that you are working on a response,"[14] to which Baltagi replied, "I [w]ill [r]eview and add my [n]otes that I will send for you to sign your names.  I do not give any authorization for anyone to sign on my behalf."[15]

On the same day, _i.e._, September 3, 2021, attorneys for Vecron and XPO submitted a Joint Status Report stating <u>inter alia</u> that Vecron had recently settled its claims against the XPO defendants and dismissed them from the lawsuit with prejudice; that all remaining defendants other than Baltagi had filed for bankruptcy; that Vecron and XPO both had remaining claims and cross-claims against Baltagi; and that

---

[12]Docket Entry No. 152 ¶ (1).

[13]Exhibit B-13 to Buchman Affidavit, Exhibit B to Plaintiff's Response, Docket Entry No. 182-3, p. 65.

[14]<u>Id.</u> at 64.

[15]<u>Id.</u>

-7-

> [w]hile Baltagi filed an answer to XPO's cross-claims,
> upon review of the docket, Baltagi never filed any
> written response to Plaintiff's Complaint filed in 2018.
> . . . Plaintiff takes the position that Baltagi never
> filed a timely response to Plaintiff's Complaint. XPO
> likewise agrees that Baltagi is in default as to
> Plaintiff's Complaint.[16]

On the same day, i.e., September 3, 2021, Baltagi delivered a
letter addressed to the court stating that he strongly disagreed
with Vecron's request for default judgment, he denied all
allegations asserted against him as false, and he asked the court
to deny the claims asserted against him and to let him know if the
court needed anything else from him.[17]

On September 29, 2021, Vecron filed a Request for Entry of
Default Against Defendant Afif Baltagi "for failure to plead or
otherwise defend Plaintiff's claims in a timely manner."[18] Vecron
explained that

> [o]n July 12, 2018, Plaintiff filed its Complaint against
> Baltagi, among others. Dkt. 1. On July 12, 2018,
> Plaintiff filed a Request for Issuance of Summons as to
> all defendants. Dkt. 2. On July 13, 2018, the summons
> was issued as to Baltagi. On September 24, 2018, Baltagi
> was served with the Summons and Complaint. Dkt. 28.
> Accordingly, Baltagi's responsive pleading was due
> October 15, 2018. . . Baltagi failed to file a responsive
> pleading in this action.[19]

---

[16]Joint Status Report, Docket Entry No. 154, p. 1 ¶ (1).

[17]September 3, 2021, Letter to the Court, Docket Entry No. 153.

[18]Docket Entry No. 155, p. 1.

[19]Id.

-8-

On the same day, _i.e._, September 29, 2021, the court entered an Order of Default as to Afif Baltagi (Docket Entry No. 156) finding

> that Afif Baltagi was properly served with Summons issued in this case, together with copies of the Complaint filed herein and all attached documents; and . . . that Afif Baltagi is in default, having failed to plead within the time allotted as required by the Federal Rules of Civil Procedure.

Pursuant to the Order of Default as to Afif Baltagi, the Clerk issued an Entry of Default (Docket Entry No. 157). The next day, September 30, 2021, the court entered an Order (Docket Entry No. 158), ordering Vecron to move for judgment by default within twenty (20) days certifying notice to defendant, and to submit affidavits with supporting documentation of Vecron's damages and evidence of reasonable and necessary attorney's fees, along with a proposed final judgment.

On October 20, 2021, Vecron filed a Motion for Default Judgment Against Defendant Afif Baltagi ("Vecron's Motion for Default Judgment") (Docket Entry No. 159). Like its Request for Entry of Default, Vecron's Motion for Default Judgment stated that "[o]n July 12, 2018, Vecron filed the Complaint against Baltagi and others. Dkt. 1. On September 24, 2018, Baltagi was served by personal service. Dkt. 28. Baltagi failed to file a responsive pleading with the Court."[20] Vecron's motion also stated that

---

[20]Vecron's Motion for Default Judgment, Docket Entry No. 159,
(continued...)

> [o]n September 29, 2021, in response to Vecron's Motion
> for Entry of Default against Baltagi, this Court entered
> an Order granting entry of default as to Baltagi, and the
> clerk subsequently filed an Entry of Default against
> Baltagi in this case.  Dkt. 157.  Baltagi ignored the
> Motion for Entry of Default and the Entry of Default.[21]

On October 25, 2021, Baltagi filed a Notice of Appeal (Docket Entry No. 160).

On December 9, 2021, Vecron and XPO filed a Joint Status Report asserting that "Defendant Afif Baltagi's notice of appeal of this Court's order entering default (ECF 160) is procedurally and substantively improper.  Vecron will move to dismiss Mr. Baltagi's appeal."[22]  The Joint Status Report also stated that "[i]f this Court grants plaintiff's Motion for Default Judgment, XPO intends to move to dismiss their cross-claims against Mr. Baltagi without prejudice."[23]

On December 30, 2021, Baltagi filed an instrument titled, "Requesting for an Appeal and Hearing Date," stating that he did know how he fell into default, protesting that the default was not fair, and asking the court to conduct a docket call.[24]

_____

[20](...continued)
p. 1.

[21]Id. at 1-2.

[22]Docket Entry No. 164, p. 1 ¶ (1).

[23]Id. at 2 ¶ (2).

[24]Docket Entry No. 165, pp. 1-5.

On January 12, 2022, Vecron filed Plaintiff's Motion to Strike or Dismiss Defendant Afif Baltagi's Notice of Appeal (Docket Entry No. 167), arguing that no final judgment or appealable interlocutory order had been entered.

On January 20, 2022, Vecron filed Plaintiff's Response in Opposition to Defendant Afif Baltagi's Request for Appeal and Hearing, arguing <u>inter alia</u> that

> [a]fter (a) not filing any response to the Complaint; (b) not participating in any of the fact witness depositions noticed and taken by defendants XPO and/or Vecron since 2019; and (c) not filing any response to Vecron's request for entry of default, Baltagi is too little, too late in his attempt to appeal the entry of default even if it was appealable, which it is not.[25]

Vecron also argued that good cause to set aside the order of default did not exist because Baltagi made no showing that he had not been served, that his failure to act was not willful, that he had a meritorious defense, or that setting aside the order of default would not prejudice Vecron.[26]

On March 10, 2022, the United States Court of Appeals for the Fifth Circuit dismissed Baltagi's appeal for want of jurisdiction (Docket Entry No. 170).

On March 11, 2022, the court entered an Order (Docket Entry No. 171), denying Baltagi's request for an appeal and hearing date and granting Vecron's Motion for Default Judgment Against Defendant

---

[25]Docket Entry No. 169, p. 1.

[26]<u>Id.</u> at 2-4.

-11-

Afif Baltagi.  The court also ordered Vecron to submit by March 17, 2022, a proposed final judgment dismissing XPO's cross-claims against Baltagi, and adjudging that Vecron recover from Baltagi $6,576,000.00, together with post-judgment interest, with each party responsible for its own costs.[27]

On March 14, 2011, Baltagi filed an instrument titled Defendant Afif Baltagi Requesting to be Dismissed on Order that Was Filed March 11th 2022 (Docket Entry No. 172), and a second Notice of Appeal to the Fifth Circuit (Docket Entry No. 173).

On March 17, 2022, XPO filed Defendants XPO Logistics and XPO Global Forwarding's Motion to Dismiss Cross-Claims Against Defendant Afif Baltagi Without Prejudice (Docket Entry No. 176). On March 18, 2022, the court entered an Order (Docket Entry No. 177) granting XPO's motion and dismissing XPO's cross-claims against Baltagi without prejudice, an Order (Docket Entry No. 178) denying Defendant Afif Baltagi's Requesting to be Dismissed on Order that Was Filed March 11th 2022, and Final Judgment (Docket Entry No. 179) in favor of Vecron against Baltagi for $6,576,000.00 with post-judgment interest at a rate of 1.15%.

On April 11, 2022, the the Fifth Circuit dismissed Baltagi's second appeal for want of prosecution (Docket Entry No. 180).

---

[27]Docket Entry No. 171, pp. 2-3.

## II.  Analysis

Asserting that "he was never actually served,"[28]

Baltagi challenges the final default judgment under
Federal Rule of Civil Procedure 60(b)(4) and 60(b)(1)
because, respectively, the judgment is void for violation
of his due process rights and good cause exists for
setting aside the judgment due to the excusable nature of
any mistake, inadvertence, or neglect that may have led
to the default.[29]

In support of the assertion that he was never actually served,

Baltagi submits his own affidavit in which he states that he was

shorter and weighed less than the person served, and he argues that

[a] default judgment was entered against me in this case
for failing to file a response to Plaintiff's Original
Complaint (the **"Complaint"**), even though I was never
served with the Complaint or summons.  I did not receive
the Complaint in person, by mail, or in any other manner
at any time.  If someone did personally accept the
documents, that person was not me or anyone living in my
house.  The description of the person served does not
match my physical characteristics or anyone living in my
house.  On September 24, 2018, I was 41 years old, 5'11"
tall, and weighed 185 pounds.  Only my wife, 11-year-old
step-daughter, and 12-month-old son were living at my
house, so they do not match the description either.  I do
not know of anyone matching the description of the person
served, and no one notified me that they accepted any
documents addressed to me.

I first learned of this lawsuit when I received XPO
Logistics, Inc. and XPO Global Forwarding, Inc.'s Amended
Answer to Plaintiff's Original Complaint and Cross Claim
Against Afif Baltagi (**"XPO's [Amended Answer and]
Crossclaim"**).  This document, along with the summons, was
mailed to my home address at 2308 Nantucket Dr., Unit C,
Houston, Texas 77057 in [the] spring of 2019.  I drafted
and filed my response to XPO's Crossclaim myself.  I did
not hire an attorney because I could not afford one and
have represented myself in this lawsuit until now.

---

[28]Baltagi's Motion, Docket Entry No. 181, p. 1 ¶ 1.

[29]Id. at 1-2 ¶ 2.  See also id. at 9 ¶ 26.

> I was not aware of Plaintiff's Original Complaint, Vecron
> Exim Ltd.'s (**"Vecron"**) claims against me, or any
> obligation to respond to the Complaint until after the
> judgment was entered against me.  The specific reason the
> Court thought I was in default was never made clear to
> me, which is why I asked for clarification multiple times
> in my filings.  The only explanation I had for the
> default was that I failed to file a responsive pleading,
> which confused me greatly because I was sure I had filed
> everything I was required to on time.  I was diligent in
> responding to any emails from the parties, attending
> required hearings, and following instructions given to me
> by the Court.
>
> The only reason I am involved in this lawsuit is because
> I had professional relationships with XPO Logistics, Inc.
> (**"XPO"**), Landash Corporation (**"Landash"**), and its owner,
> Jason Atkins (**"Atkins"**) at the time the alleged fraud
> took place.[30]

Asserting that until the filing of the pending Motion for Relief

from Judgment he was defending himself <u>pro se</u>, Baltagi argues that

> [n]ow, through his counsel retained after the entry of
> the default judgment, Baltagi asks this Court to
> recognize the error in service that led to his alleged
> default, and correct that error by reopening the case and
> allowing Baltagi to present his defense to Plaintiff's
> claims.[31]

Baltagi also argues that "[t]his Court should grant [him] relief

from the judgment because principles of law and equity require it

to be set aside for a proper adjudication on the merits."[32]

---

[30]Affidavit of Afif Baltagi in Support of Motion for Relief
from the Judgment, Exhibit A to Baltagi's Motion, Docket Entry
No. 181-1, pp. 1-2 ¶¶ 2-5.

[31]Baltagi's Motion, Docket Entry No. 181, p. 6 ¶ 14.

[32]<u>Id.</u> at 2 ¶ 2.

Asserting that Baltagi participated extensively in the litigation, that Baltagi was represented by counsel at his deposition where he refused to answer any questions pursuant to his Fifth Amendment privilege against self-incrimination, and that Baltagi has filed two unsuccessful appeals, Vecron responds that Baltagi waived his defense that service of process was insufficient.[33]

Baltagi replies that he could not have waived his right to challenge the ineffective service because he had no knowledge of it until after the Final Judgment was entered, and that his participation in the lawsuit proves only that he had notice and opportunity to respond to XPO's claims against him, not that he had notice and opportunity to respond to Vecron's claims against him.[34]

## A.    Applicable Law

Federal Rule of Civil Procedure 55(c) states that "[t[he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)."  Baltagi moves the court to relieve him from the Final Judgment (Docket Entry No. 179) of default entered in this action on March 18, 2022, in favor of Vecron under Rule 60(b)(1) and Rule 60(b)(4).   Rule

---

[33]Vecron's Response, Docket Entry No. 182, pp. 1-2.

[34]Baltagi's Reply, Docket Entry No. 183, pp. 1-3.

60(b)(1) allows a court to relieve a party from a final judgment
for "mistake, inadvertence, surprise, or excusable neglect."   In
assessing a motion to set aside a default judgment, the Fifth
Circuit has interpreted Rule 60(b)(1) as incorporating the Rule 55
"good cause" standard applicable to entries of default.

> In determining whether good cause exists to set aside a
> default judgment under Rule 60(b)(1) [courts] examine the
> following factors: "whether the default was willful,
> whether setting it aside would prejudice the adversary,
> and whether a meritorious defense is presented."

Wooten v. McDonald Transit Associates, Inc., 788 F.3d 490, 500 (5th
Cir. 2015) (quoting Jenkens & Gilchrist v. Groia & Co., 542 F.3d
114, 119 (5th Cir. 2008) (quoting Dierschke v. O'Cheskey (In re
Dierschke), 975 F.2d 181, 183 (5th Cir. 1992))).   Other
considerations a court may weigh include "whether the public
interest was implicated, whether there was significant financial
loss to the defendant, and whether the defendant acted
expeditiously to correct the default." Jenkens, 542 F.3d at 119
(citing In re Dierschke, 975 F.2d at 183-84). But "if a district
court finds a defendant's default to be willful, then the district
court need not make any other finding." Id. at 120 (citing In re
Dierschke, 975 F.2d at 184). "A willful default is an 'intentional
failure' to respond to litigation." Beitel v. OCA, Inc. (In re
OCA, Inc.), 551 F.3d 359, 370 n. 32 (5th Cir. 2008) (citing Lacy v.
Sitel Corp., 227 F.3d 290, 292 (5th Cir. 2000) (quoting In re
Dierschke, 975 F.2d at 184)). Baltagi bears the burden of showing

-16-

by a preponderance of the evidence that his neglect was excusable, rather than willful. <u>Wooten</u>, 788 F.3d at 500-01 (citing <u>Germano v. Taishan Gypsum Company, Ltd. (In re Chinese-Manufactured Drywall Products)</u>, 742 F.3d 576, 594 (5th Cir. 2014) ("A finding of willful default ends the inquiry, for 'when the court finds an intentional failure of responsive pleadings there need be no other finding.'")(quoting <u>Lacy</u>, 227 F.3d at 292)(quoting <u>In re Dierschke</u>, 975 F.2d at 184)).

Rule 60(b)(4) allows a court to relieve a party from a final judgment if "the judgment is void."  "A void judgment is a legal nullity. . . [A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final."  <u>United Student Aid Funds, Inc. v. Espinosa</u>, 130 S. Ct. 1367, 1377 (2010).

> A judgment is not void, for example, simply because it is or may have been erroneous. . . Similarly, a motion under Rule 60(b)(4) is not a substitute for a timely appeal. . . . Instead, Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard.

<u>Id.</u> (quotation marks and citations omitted).  Although the decision to grant or deny relief under Rule 60(b) is generally within the district court's sound discretion, if the judgment is void, the court has no discretion and must set aside the judgment. <u>Recreational Properties, Inc. v. Southwest Mortgage Service Corp.</u>,

804 F.2d 311, 313-14 (5th Cir. 1986).   The Fifth Circuit has "adopted a policy in favor of resolving cases on their merits and against the use of default judgments." Rogers v. Hartford Life & Accident Insurance Co., 167 F.3d 933, 936 (5th Cir. 1999). "This policy, however, is counterbalanced by considerations of social goals, justice and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." Id. (quotation marks and citations omitted).

**B.   Application of the Law to the Facts**

   1.   <u>Baltagi Has Failed to Establish Entitlement to Relief Under Rule 60(b)(4)</u>

Baltagi argues that he is entitled to relief from the Final Judgment under Rule 60(b)(4) because he was never served with Vecron's complaint and because he did not have actual notice of Vecron's claims against him, his right to due process was violated when the court entered the default judgment against him for failing to file an answer to Vecron's Complaint.[35]  Baltagi does not argue that the lack of service deprived the court of personal jurisdiction over him.[36]  Instead, Baltagi argues that

---

[35]Baltagi's Motion, Docket Entry No. 181, pp. 9-12 ¶¶ 27-33.

[36]Baltagi's Reply, Docket Entry No. 183, pp. 2-3 ¶ 5 ("Baltagi's Motion does not argue that this Court's jurisdiction over him was improper, but rather that he was never served with Plaintiff's Complaint and, therefore, he had no duty to respond to it.").

the judgment against [him] is void because the Court
acted inconsistently with due process and rendered the
default judgment against him without an opportunity to be
heard.  The judgment violated [Baltagi]'s right to due
process because the default was based on his failure to
file a responsive pleading to a complaint that he did not
have procedural or actual notice of.  Because Baltagi had
no notice of Plaintiff's Original Complaint, he never
received notice reasonably calculated to apprise him of
Plaintiff's claims and afford him an opportunity to
present a defense, as required by due process.

Baltagi did not have procedural notice of the
Complaint because he was not served in accordance with
Federal Rule of Civil Procedure 4.  Although the Return
of Service Summons reflects that personal service was
effected against [Baltagi] under Rule 4(e)(2)(A), the
service was done in error and some other, unknown person
was served instead of [Baltagi].  Service was not proper
under [Rule] 4(e)(2)(B) either, which allows service to
be made by leaving a copy of the summons and complaint at
the defendant's home "with someone of suitable age and
discretion who resides there," because no one living with
Baltagi at the time matches the description of the person
served. . . The failure to discover the error until now
prevented it from being corrected prior to the default
judgment.  Nonetheless, such an error uncorrected by
actual notice renders a judgment void, and there is no
time limit to attack a judgment that is void. . .

Baltagi did not have actual notice of Plaintiff's
claims against him either; not before the responsive
deadline or before the time in which he could have cured
his default.  He could not have had actual notice in time
to timely answer the Complaint because he did not even
learn of the litigation until he was served with XPO's
crossclaim about six months after he was allegedly served
with Plaintiff's Complaint.  His actions throughout the
litigation show he could not have had actual notice at
any point leading up to the judgment either because he
made it clear that he did not understand why he was in
default.  In his Status Report filed September 3, 2021,
he even asked the Court to let him know if it needs
anything from him.  Nothing in the Court's docket
suggests it ever responded to Baltagi's pleas for further
explanation or specifically asked him to file an answer
to the Complaint.  The only explanation from this Court
given prior to default was that Baltagi had failed to

-19-

timely file a responsive pleading.  Because Baltagi was
served with only one pleading — XPO's crossclaim, to
which he did respond — and had no reason to believe he
was meant to be served with another, such an explanation
was insufficient to put the <u>pro se</u> defendant on actual
notice of Plaintiff's claims.

Without procedural or actual notice, Baltagi
similarly lacked any notice sufficient to satisfy due
process.  Given all the circumstances, Baltagi could not
have had notice reasonably calculated to apprise him of
Plaintiff's claims, let alone afford him an opportunity
to timely respond to them, because he had no reason to
believe he had even been sued by a party other than
XPO.[37]

Citing Federal Rule of Civil Procedure 12(h)(1), Vecron

responds that Baltagi has waived his defense that service of

process was insufficient by participating in this action for over

three years without raising that defense in either a responsive

pleading or a Rule 12 motion.[38]  Citing <u>Henderson v. United States</u>,

116 S. Ct. 1638, 1648 (1996), for stating that "the core function

of service is to supply notice of the pendency of a legal action,

in a manner and at a time that affords the defendant a fair

opportunity to answer the complaint and present defenses and

_____

[37]Baltagi's Motion, Docket Entry No. 181, 10-12 ¶¶ 29-32.  <u>See
also</u> Baltagi's Reply, Docket Entry No. 183, pp. 1-3 ¶¶ 1-5 (arguing
that Baltagi could not have waived his right to challenge the
ineffective service of process because he had no knowledge of the
defective service until after the Final Judgment was entered), and
p. 3 ¶¶ 6-8 (arguing that Baltagi's participation in this action
does not prove that he had notice of Vecron's claims as opposed to
XPO's cross claims).

[38]Vecron's Response, Docket Entry No. 182, pp. 4-5.

objections," Vecron argues that Baltagi participated extensively in this litigation and was represented by counsel at his deposition.[39]

Assuming without deciding that Baltagi was not served with the summons and complaint on September 24, 2018, as indicated by the Proof of Service filed as Docket Entry No. 28, Baltagi has failed to show that this procedural deprivation violated his constitutional right to due process. "Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Espinosa, 130 S. Ct. at 1378 (quoting Mullane v. Central Hanover Bank & Trust Co., 70 S. Ct. 652, 657 (1950)).  See also New York Life Insurance Co v. Brown, 84 F.3d 137, 143 (5th Cir. 1996) (quoting Mullane, 70 S. Ct. at 657 ("The fundamental requisite of due process of law is the opportunity to be heard.") (quoting Grannis v. Ordean, 34 S. Ct. 385, 394 (1914)).  Despite Baltagi's assertions to the contrary, the record in this case demonstrates that he not only received actual notice of the pendency of Vecron's claims against him in 2019 and again in 2021, but also that he received multiple opportunities to defend himself against those claims and against the entry of default and the Final Judgment from which he seeks relief, but that he failed to do so.

---

[39]Id. at 6-8.

(a)   Baltagi Received Notice of Vecron's Claims Against
      Him in 2019

Baltagi's contention that he was not aware of Vecron's claims
against him until Final Judgment was entered against him on March
18, 2022, is contradicted by filings in the court's record from
2019.  For example, the style of the case on XPO's Amended Answer
and Crossclaim, which Baltagi admits having received in the spring
of 2019,[40] identified Vecron as Plaintiff and Baltagi as one of
several named defendants.[41]   Moreover XPO asserted cross-claims
against Baltagi,[42] and Baltagi identified himself as "Cross Claim
Defendant" in the Answer that he filed in response to XPO's cross
claims.[43]  Because a cross claim is by definition an action against
a co-party, not an additional party, these filings demonstrate that
Baltagi had actual knowledge that Vecron had asserted claims
against him before XPO asserted cross claims against him.  See Fed.
R. Civ. P. 13(g) ("A pleading may state as a crossclaim any claim
by one party against a coparty if the claim arises out of the
transaction or occurrence that is the subject matter of the
original action . . .").  See also Community Coffee Co., Inc. v.

---

[40]Affidavit of Afif Baltagi in Support of Motion for Relief
from the Judgment, Exhibit A to Baltagi's Motion, Docket Entry
No. 181-1, p. 2 ¶ 3.

[41]See XPO's Amended Answer and Cross Claim, Docket Entry
No. 49, p. 1.

[42]Id. at 36-43 ¶¶ 228-283.

[43]Docket Entry No. 60, p. 1.

<u>M/S Kriti Amethyst</u>, 715 F. Supp. 772, 774 n. 5 (E.D. La. 1989) ("cross-claims, by definition, are asserted against <u>existing</u> parties — not . . . "additional" parties"); and <u>Louisiana Marine Operators, L.L.C. v. JRC Marine, L.L.C.</u>, Civil Action No. 19-9302, 2019 WL 13039729, * 4 (E.D. La. October 10, 2019) (same). Additional evidence that Baltagi had actual knowledge of Vecron's claims against him in 2019 comes from his efforts to avoid Vecron's discovery requests.

On July 30, 2019, Baltagi sent an email to Vecron's counsel asking "please resend the two pdf attachment[s] of interrogatorie question[s] that was sent to me earlier this month."[44]  On August 12, 2019, Baltagi filed his Motion to Stay Discovery seeking

> a temporary order staying Plaintiff from seeking discovery against Mr. Baltagi, or alternatively, . . . a temporary protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.  In support of this Motion, Mr. Baltagi would respectfully show:
>
> I.
>
> **Plaintiff has initiated this action against a number of defendants, including Mr. Baltagi** [emphasis added]. On July 10, 2019, Plaintiff mailed a <u>Plaintiff's First Request for Production of Documents</u> to Defendant Afif Baltagi and a Plaintiff's Interrogatories to Defendant Afif Baltagi.  Mr. Baltagi's response to these discovery requests are due Monday, August 12, 2019.
>
> In addition, Plaintiff's counsel held a deposition of Mr. Baltagi on August 5, 2019.  At that deposition, Plaintiff's counsel was made aware that it was understood that the U.S. Justice Department and the Federal Bureau of Investigation ("FBI") have an ongoing criminal

---

[44]Exhibit B-4 to Buchman Affidavit, Exhibit B to Plaintiff's Response, Docket Entry No. 182-3, p. 20.

investigation and that Mr. Baltagi would assert privilege pursuant to the Fifth Amendment of the U.S. Constitution.

. . .

Alternatively, Mr. Baltagi requests that this Court grant a temporary protective order pursuant to Rule 26(c) and order that the Plaintiff's requested discovery from Mr. Baltagi not be sought, in whole, from Mr. Baltagi, until the U.S. Department of Justice and FBI have concluded their criminal investigation as related to this case.[45]

In his Motion to Stay Discovery Baltagi acknowledges (1) that Plaintiff, _i.e._, Vecron, initiated this action against a number of defendants, including him; (2) that "Vecron mailed <u>Plaintiff's First Request for Production of Documents</u> to Defendant Afif Baltagi and Plaintiff's Interrogatories to Defendant Afif Baltagi;" (3) that Vecron's counsel attempted to depose him on August 5, 2019, but that instead of answering questions he asserted his Fifth Amendment privilege against self incrimination; and (4) that he sought to avoid responding to Vecron's discovery requests.

Moreover, on August 30, 2019, Vecron filed its Opposition to Baltagi's Motion to Stay Discovery asserting, <u>inter alia</u>, that

Baltagi is a defendant and a key witness in this case. He was branch manager for XPO. He executed key documents on behalf of XPO that enabled him and his co-conspirators to steal millions of dollars from Plaintiff and others. Baltagi also was the XPO representative that Plaintiff dealt with on its failed tire transaction. Plaintiff will be prejudiced by the imposition of an indefinite stay of discovery from Baltagi.[46]

---

[45]Baltagi's Motion to Stay Discovery, Docket Entry No. 81, pp. 1-2.

[46]Vecron's Opposition to Baltagi's Motion to Stay Discovery,
(continued...)

-24-

Baltagi's receipt of discovery requests from Vecron, Baltagi's motion to stay discovery, and Vecron's response to Baltagi's motion to stay discovery all demonstrate that Baltagi had actual knowledge that Vecron — and not just XPO — had asserted claims against him in this action no later than the summer of 2019.

> (b)   In 2021 Baltagi Received Additional Notice of Vecron's Claims Against Him and Notice of Vecron's Contention that He had been Personally Served but had Not Filed a Responsive Pleading

On August 23, 2021, the court entered an Order (Docket Entry No. 152) directing the parties to submit a joint status report describing the remaining parties and claims.  On September 3, 2021, counsel for Vecron sent Baltagi an email stating that a Joint Status Report was being prepared for the court and asking him if he could review it and email his comments later that day.[47]   After Vecron's counsel emailed a draft of the Joint Status Report to Baltagi, he responded "I do not give my authorization for anyone to sign on my behalf."[48]   Later that day counsel for Vecron and counsel for XPO filed a Joint Status Report stating as follows:

---

[46](...continued)
Docket Entry No. 82, p. 4.

[47]September 3, 2021, Email from Jodi Buchman to Afif Baltagi, Exhibit B-14 to Buchman Affidavit, Exhibit B to Plaintiff's Response, Docket Entry No. 182-3, pp. 67-69.

[48]September 3, 2021, Email from Afif Baltagi to Jodi Buchman, Exhibit B-13 to Buchman Affidavit, Exhibit B to Plaintiff's Response, Docket Entry No. 182-3, p. 64.

**(1)   The remaining parties and claims in this action**

Plaintiff Vecron Exim Ltd. ("Plaintiff") recently settled its claims against defendants, XPO Logistics, Inc. and XPO Global Forwarding, Inc. (collectively, "XPO") and dismissed them from this lawsuit with prejudice.  All of the remaining defendants other than Afif Baltagi ("Baltagi") filed for bankruptcy.  **Plaintiff has remaining claims against Baltagi** [emphasis added].  XPO also filed cross-claims against Baltagi.  While Baltagi filed an answer to XPO's cross-claims, upon review of the docket, **Baltagi never filed any written response to Plaintiff's Complaint filed in 2018** [emphasis added].  At some point in the fall of 2018, Baltagi mailed a letter to Plaintiff's local counsel regarding the Complaint, but Plaintiff contends that it did not conform to a proper answer and it was never filed with this Court.  Plaintiff takes the position that Baltagi never filed a timely response to Plaintiff's Complaint.  XPO likewise agrees that Baltagi is in default as to Plaintiff's Complaint.

. . .

**(2)   What discovery has been completed as to those claims**

Fact discovery in the original case closed in December 2019.

**(3)   What, if any additional discovery is necessary**

**Plaintiff intends to file a motion for judgment by default against Baltagi in the coming days on all counts of the Complaint against him** [emphasis added].  If a default judgment is subsequently entered against Baltagi, Plaintiff has no need for any additional discovery.

If, however, default judgment is not entered against Baltagi in favor of Plaintiff for whatever reason, Plaintiff requests this Court allow for discovery to be re-opened for the sole purpose of taking Baltagi's deposition. . .

XPO states that Baltagi was already deposed in this case in August 2019, he asserted his Fifth Amendment right as to all questions posed of him by any party.  Baltagi was later deposed in September 2020 in a related

-26-

case pending in Texas state court and he again asserted
his Fifth Amendment right and refused to answer any
question posed of him.  Given that, and the existing
record, XPO disagrees that it is a prudent use of the
parties' resources to pursue an additional deposition of
Baltagi.  Instead, XPO proposes that Plaintiff submit its
default and/or summary judgment filing(s) to this Court
and, to the extent Baltagi substantively responds,
approach the Court at that point to determine whether an
additional deposition is necessary. . .

. . .

**(4)   When, with reasonable dispatch, such discovery can
be completed.**

**Plaintiff will, in the coming days, promptly seek a
default judgment against Baltagi** [emphasis added]. . . [49]

Thus the September 3, 2021, Joint Status Report filed by counsel

for Vecron and counsel for XPO apprised both the court and Baltagi

(1) that Vecron had unresolved claims against Baltagi, (2) that

Baltagi had not filed a responsive pleading to Vecron's Complaint;

and (3) that because Baltagi had not filed a responsive pleading to

Vecron's Complaint, Vecron intended to seek a default judgment

against Baltagi.

Instead of participating in the Joint Status Report, Baltagi

delivered a letter to the court in which he stated:

I apologize in advance if my verbiage and lingo
might not be the appropriate one for court but as you
know I represent myself as I cannot afford a lawyer.

I strongly disagree with the request of a default
judgment.  The reason I have plead the fifth during
depositions is because I received a target letter from
the FBI and IRS, and I was advised to plead the fifth in

---

[49]Joint Status Report, Docket Entry No. 154, pp. 1-2.

the civil cases.  The government investigators did their
job and the guilty parties in this Matter have been
indicted.  I have not your honor.  The plaintiff[]
state[s] that I am the only one that hasn't filed for
bankruptcy and thus that's the reason I am still being
sued.  So the actual guilty parties are not sued because
they filed bankruptcy?

I deny ALL allegations against me as they are false.

I respectfully ask that you please deny this claim.
If the court needs something from me please let me know.
I, more than anyone would like real justice the truth to
stand.[50]

In his letter to the court Baltagi strongly disagreed with Vecron's

intent to request default against him, and denied all allegations

against him as false, but Baltagi acknowledged that he was being

sue by Plaintiff, i.e., Vecron, and he neither denied nor refuted

Vecron's assertion that he had not filed an answer or responsive

pleading to Vecron's Complaint.

On September 29, 2021, Vecron filed a Request for Entry of

Default Against Defendant Afif Baltagi "for failure to plead or

otherwise defend Plaintiff's claims in a timely manner."[51]  Vecron

explained that

[o]n July 12, 2018, Plaintiff filed its Complaint against
Baltagi, among others.  Dkt. 1.  On July 12, 2018,
Plaintiff filed a Request for Issuance of Summons as to
all defendants.  Dkt. 2.  On July 13, 2018, the summons
was issued as to Baltagi.  On September 24, 2018, Baltagi
was served with the Summons and Complaint.  Dkt. 28.
Accordingly, Baltagi's responsive pleading was due

---

[50]September 3, 2021, Letter to the Court, Docket Entry No. 153.

[51]Docket Entry No. 155, p. 1.

> October 15, 2018. . . Baltagi failed to file a responsive
> pleading in this action.
>
> Now almost three years have passed since Baltagi was
> served.  Although Baltagi has remained in contact with
> Plaintiff's counsel in this matter, correspondence to
> counsel is not a substitute for filing an answer or
> responsive pleading under Fed. R. Civ. P. 12.
>
> . . .
>
> Baltagi is not in military service.  An affidavit in
> compliance with the Servicemembers Civil Relief Act is
> attached hereto as **Exhibit A**.
>
> Accordingly, Plaintiff respectfully requests entry
> of the attached order of default against Baltagi for
> failure to timely answer the Complaint after service of
> process.[52]

The court entered an Order of Default as to Afif Baltagi (Docket

Entry No. 156) on the same day finding

> that Afif Baltagi was properly served with Summons issued
> in this case, together with copies of the Complaint filed
> herein and all attached documents; and . . . that Afif
> Baltagi is in default, having failed to plead within the
> time allotted as required by the Federal Rules of Civil
> Procedure.

Pursuant to the Order of Default as to Afif Baltagi, the Clerk

issued an Entry of Default (Docket Entry No. 157).  The next day,

September 30, 2021, the court entered an Order (Docket Entry

No. 158), directing Vecron to move for judgment by default within

twenty (20) days certifying notice to defendant, and to submit

affidavits with supporting documentation of Vecron's damages and

evidence of reasonable and necessary attorney's fees, along with a

proposed final judgment.

---

[52] Id. at 1-2.

On October 20, 2021, Vecron filed its Motion for Default Judgment (Docket Entry No. 159). Like its Request for Entry of Default, Vecron's Motion for Default Judgment stated that "[o]n July 12, 2018, Vecron filed the Complaint against Baltagi and others. Dkt. 1. On September 24, 2018, Baltagi was served by personal service. Dkt. 28. Baltagi failed to file a responsive pleading with the Court."[53] Vecron's Motion for Default Judgment also stated that

> [o]n September 29, 2021, in response to Vecron's Motion for Entry of Default against Baltagi, this Court entered an Order granting entry of default as to Baltagi, and the clerk subsequently filed an Entry of Default against Baltagi in this case. Dkt. 157. Baltagi ignored the Motion for Entry of Default and the Entry of Default.[54]

Both Vecron's Request for Entry of Default (Docket Entry No. 155), and Vecron's Motion for Default Judgment (Docket Entry No. 159) include certificates of service stating that in addition to filing in the court's ECF system, Baltagi was served by first-class mail and by certified mail, return receipt requested. Thus, Vecron's Request for Entry of Default and Vecron's Motion for Default Judgment apprised both the court and Baltagi that the court's record contained a proof of service reflecting that (1) Baltagi had been personally served with summons and Vecron's Complaint on September 24, 2018; (2) Baltagi had not filed a responsive pleading to Vecron's Complaint; and (3) that because

---

[53]Vecron's Motion for Default Judgment, Docket Entry No. 159, p. 1.

[54]<u>Id.</u> at 1-2.

Baltagi had not filed a responsive pleading to Vecron's Complaint, Vecron sought default judgment against Baltagi.  Baltagi neither responded to Vecron's Request for Entry of Default or to Vecron's Motion for Default Judgment, nor disputed Vecron's assertions that he had been served with its Complaint but had not filed a responsive pleading.  Instead, on October 25, 2021, Baltagi filed a Notice of Appeal (Docket Entry No. 160), which was eventually dismissed for lack of jurisdiction (Docket Entry No. 170).

On December 30, 2021, Baltagi filed an instrument titled, "Requesting for an Appeal and Hearing Date" in which he expressly acknowledge Vecron's claims against him by stating that "I would like to remind the court, that Vecron is asking for funds . . . It seems that the other defendants filed for bankruptcy and walked away.  If I had any blame in the matters I have been accused of, I would have done what they did, and I would not be here defending myself."[55]  The Joint Status Report that counsel for Vecron and XPO filed on September 3, 2021, the Request for Entry of Default that Vecron filed on September 29, 2021, and the Motion for Default Judgment that Vecron filed on October 20, 2021, as well as the letter that Baltagi delivered to the court on September 3, 2021, and the request for an appeal and hearing date that Baltagi filed on December 30, 2021, all demonstrate that Baltagi had actual knowledge of the claims that Vecron asserted against him.

---

[55]Docket Entry No. 165, p. 2.

    (c)   Baltagi had Opportunity to be Heard

     The facts of this case are analogous to facts at issue in
Broadcast Music, Inc. v. M.T.S. Enterprises, Inc., 811 F.2d 278
(5th Cir. 1987), in which the Fifth Circuit affirmed a default
judgment against defendants who had not properly been served under
Rule 4.   Id. at 280-81.   Broadcast Music was a case against a
corporation and two of its shareholders.  All three defendants were
represented by the same counsel, who duly received notice of all
relevant matters, but there was an issue as to whether the two
shareholders had been formally served with process.   Counsel
attended a pretrial conference on behalf of all three defendants,
participated in settlement negotiations on behalf of all three
defendants, and moved to withdraw as counsel for all three
defendants.   The two shareholders never responded to the
plaintiff's complaint, and the first time their counsel raised the
issue of insufficient service was at a hearing on the plaintiff's
motion for entry of default judgment.   After the court entered
default judgment against the shareholders and denied their motion
to vacate the default judgment under Civil Rule 60(b), the
shareholders appealed.   On appeal the Fifth Circuit rejected the
shareholders' argument regarding the plaintiff's failure to
properly serve them.  Acknowledging that failure to properly serve
defendants can result in lack of personal jurisdiction that would
render the default judgment void, and that there was no waiver

                              -32-

under Rule 12(h)(1) because the shareholders had not filed a
responsive pleading, the Fifth Circuit concluded that the
shareholders had nevertheless waived the service defects.   The
Fifth Circuit explained that

> [t]he Federal Rules do not in any way suggest that a
> defendant may halfway appear in a case, giving plaintiff
> and the court the impression that he has been served,
> and, at the appropriate time, pull failure of service out
> of the hat like a rabbit in order to escape default
> judgment.   To countenance this train of events would
> elevate formality over substance and would lead
> plaintiffs to waste time, money, and judicial resources
> pursuing a cause of action.

811 F.2d at 281.

The nature and extent of Baltagi's conduct here is comparable
to that of the two shareholders in Broadcast Music.  By the time
the court entered the Final Judgment of default from which Baltagi
seeks relief, Baltagi had been participating in this action for
almost three years during which he filed a detailed answer to XPO's
cross claims, he accepted discovery requests and appeared for his
deposition accompanied by counsel, he filed instruments with the
court, he agreed to numerous amendments to the court's docket
control order, and he filed two notices of appeal.   Baltagi's
participation and filings in this action gave Vecron and the court
the impression that he had been served, and show that he had both
actual knowledge of Vecron's claims against him at least as early
as the day that he was served with XPO's Amended Anser and Cross
Claims in the spring of 2019.   Moreover, the parties' filings in

-33-

the fall of 2021 show that Baltagi then received additional notice of Vecron's claims against him and multiple opportunities to dispute both Vecron's assertions that he had been personally served with summons and Vecron's Complaint on September 24, 2018, and that he had failed to file an answer or responsive pleading thereto. Opportunities for Baltagi to respond were presented by the filing of the Joint Status Report September 3, 2021, the filing of Vecron's Request for Default on September 29, 2021, and the filing of Vecron's Motion for Default Judgment on October 20, 2021. But in the face of each of these filings Baltagi remained silent, failing either to deny or to refute Vecron's assertions that he had been served with its Complaint and had not filed a responsive pleading. On these facts Baltagi cannot show that any failure of service violated his right to due process by depriving him of notice of Vecron's claims against him or opportunity to be heard. Accordingly, the court concludes that Baltagi is not entitled relief from the Final Judgment of default under Rule 60(b)(4) because that judgment is not void. See Espinosa, 130 S. Ct. at 1378 (recognizing that a party who was not served with a summons and complaint, but who had actual knowledge of the plaintiff's claims against him, has not been deprived of his due process). See also Broadcast Music, 811 F.2d at 278 (affirming a default judgment against defendants who had not properly been served under Rule 4).

2.   <u>Baltagi Has Failed to Establish Entitlement to Relief
     Under Rule 60(b)(1)</u>

Baltagi argues that he is entitled to relief from the Final
Judgment under Rule 60(b)(1) for good cause because the default was
excusable and not willful, because Vecron will not be prejudiced by
having to litigate on the merits, and because Baltagi can present
a meritorious defense that will lead to the just result at trial.[56]
Baltagi argues that

> [t]he facts in <u>Jenkens</u> are similar to the facts presented
> here because the defendants in both cases received
> default judgment against them for their failure to file
> an answer to the complaint. <u>Jenkens</u>, 542 F.3d at 117.
> In <u>Jenkens</u>, the defendant sought relief from the final
> default judgment by filing a motion under Rule 60(b).
> <u>Id.</u>  She argued that her failure to answer was due to
> mistake, inadvertence, or neglect excusable under [Rule]
> 60(b)(1) because she was either never served with a
> summons along with the complaint or the summons was lost
> before she or her attorney saw it, and thus, she never
> learned of her duty to answer.  <u>Id.</u> at 117.  The Fifth
> Circuit ultimately vacated the district court's denial of
> relief under Rule 60(b)(1) because it found that each of
> the "good cause" factors weighed in the defendant's
> favor.  <u>Id.</u> at 124.[57]

Baltagi has not offered good cause why the Final Judgment of
default should be set aside.  Despite the fact that both Vecron's
Request for Entry of Default and Vecron's Motion for Default
Judgment asserted that Baltagi had been personally served with
summons and Vecron's Complaint on September 24, 2018, and that
Baltagi had failed to file a responsive pleading thereto, Baltagi

---

[56]Baltagi's Motion, Docket Entry No. 181, pp. 12-20 ¶¶ 34-49.

[57]<u>Id.</u> at 13 ¶ 35.

not only failed to file any response to Vecron's Request for Entry of Default or Motion for Default Judgment but also waited to argue that he had not been served with process until two months after the court entered the Final Judgment of default.

Asserting that his contacts with the court prove nothing more than his knowledge that he was a party to this lawsuit, Baltagi argues that on multiple occasions he expressed his confusion for the default and sought explanation from the court.[58]  But "[m]ere confusion or lack of familiarity with the litigation process does not excuse [Baltagi]'s neglect of [his] responsibility to respond [to Vecron's claims]."  UnitedHealthcare Insurance Co. v. Holley, 724 F. App'x 285, 288 (5th Cir. 2018) (per curiam) (citing In re Dierschke, 975 F.2d at 184).  For the reasons explained in the preceding section, the court has already found that Baltagi had actual knowledge of Vecron's claims against him and opportunity to be heard.

Moreover, as evidenced by the Answer that he filed to the cross claims asserted against him by XPO (Docket Entry No. 60), Baltagi knew how to file a responsive pleading.  And as evidenced by his appearance at his August 5, 2019, deposition with counsel — despite his protestations to the contrary — Baltagi has not been entirely unrepresented in this litigation.  Nevertheless, even in the face of Vecron's Request for Entry of Default and Motion for

---

[58]Baltagi's Reply, Docket Entry No. 183, p. 4 ¶ 9.

Default Judgment, Baltagi not only failed to file or seek leave to file a responsive pleading to Vecron's claims, he failed to respond at all and did not dispute Vecron's assertions that he had been personally served with summons and Vecron's Complaint on September 24, 2018.  Although Baltagi argues that the fact that he maintained contact with opposing counsel concerning the matters of litigation shows that his failure to respond to Vecron's Complaint could not have been willful,[59] Baltagi's contact with opposing counsel was regular but not substantive.  In addition to failing to respond to Vecron's Complaint against him or to Vecron's request or motion for default, Baltagi failed to respond to any questions posed at his deposition,[60] failed to participate in any of the fact witness depositions noticed and taken by Vecron or XPO,[61] and on January 27, 2021, notified the mediator and other parties that he would not participate in mediation.[62]  Baltagi fails to point to any evidence in the record showing that he has made any substantive effort to defend or resolve the claims that Vecron has asserted against him.

---

[59]Baltagi's Motion, Docket Entry No. 181, pp. 14-15 ¶¶ 38-39.

[60]See Baltagi Deposition, p. 7:17-8:21 (asserting Fifth Amendment privilege against self-incrimination), Exhibit A to Vecron's Response, Docket Entry No. 182-2, pp. 8-9.  See also Joint Status Report, Docket Entry No. 154, p. 2 ¶ (3).

[61]See Plaintiff's Response in Opposition to Defendant Afif Baltagi's Request for Appeal and Hearing, Docket Entry No. 169, p. 1.

[62]See Email dated January 27, 2021, from Baltagi to Judge Tad Halbach, Exhibit B-9 to Buchman Affidavit, Exhibit B to Vecron's Response, Docket Entry No. 182-3, p. 40.

On these facts the court can only conclude that Baltagi was "aware of the allegations against [him] and chose to do nothing. That is the definition of willful default, and relief for good cause is unavailable to [him]." Bossier v. Katsur, 676 F. App'x 260, 263 (5th Cir. 2017). See also id. ("[R]ushing to court once a default judgment is entered is insufficient to show a default was not willful."). Because the court concludes that Baltagi's failure to respond to Vecron's claims was willful, Baltagi is unable to establish good cause to set aside the Final Judgment of default under Rule 60(b)(1). See UnitedHealthcare Insurance Co. v. Holley, 724 F. App'x 285, 288 (5th Cir. 2018) ("[T]he weight of this court's authority indicates [that] once a district court finds that default was willful, the inquiry ceases, and it does not abuse its discretion in denying defendant's request to set aside the judgment."). See also In re Chinese-Manufactured Drywall Products, 742 F.3d at 594 ("A finding of willful default ends the inquiry, for 'when the court finds an intentional failure of responsive pleadings there need be no other finding.'")(quoting Lacy, 227 F.3d at 292, and In re Dierschke, 975 F.2d at 184)).

## III.  **Conclusions and Order**

For the reasons stated in § II.B.1, above, Baltagi has failed to establish that the default judgment from which he seeks relief is void entitling him to relief under Rule 60(b)(4).  For the

-38-

reasons stated in § II.B.2, above, Baltagi has failed to establish good cause for granting him relief from the default judgment under Rule 60(b)(1). Accordingly, Defendant Afif Baltagi's Motion for Relief from Judgment, Docket Entry No. 181, is **DENIED**.

    **SIGNED** at Houston, Texas, on this 1st day of July, 2022.

                                    _____

                                           SIM LAKE
                              SENIOR UNITED STATES DISTRICT JUDGE

-39-